IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

JOHN ROLLAS,

      Appellant,

v.

Case No. 5D17-1526

DEPARTMENT OF BUSINESS
AND PROFESSIONAL REGULATION,

      Appellee.

_____/

Opinion filed February 2, 2018

Administrative Appeal from the
Florida Real Estate Commission, a division
of the Florida Department of Business and
Professional Regulation.

Robert L. Case, of Stovash, Case
& Tingley, P.A., Orlando, for
Appellant.

Dwight O. Slater, Chief Appellate
Counsel, Department of Business &
Professional Regulation, Tallahassee,
for Appellee.

EVANDER, J.

John Rollas appeals the final order of the Florida Real Estate Commission ("FREC") denying his claim against the Florida Real Estate Recovery Fund ("the Recovery Fund"). Rollas argues FREC incorrectly determined that he did not meet the statutory requirements for an award under the Recovery Fund. We reverse.

Peter Voigt was a licensed real estate broker. In June 2010, he formed Priority One Management Group, LLC ("Priority One"), a residential property management company. Rollas owned a number of single family residential properties, which he utilized as rental properties. In 2012, Voigt approached Rollas, seeking financing. Rollas subsequently invested money in Priority One. In return, Rollas received an interest in Priority One, as well as an agreement that Priority One would provide property management services to Rollas at a substantially reduced fee. In February 2015, Rollas loaned monies to Priority One at zero percent interest to be repaid in monthly installments. In further consideration for the loan, Priority One agreed to provide property management services to Rollas at no cost, and Voigt agreed to personally manage Rollas's properties for a period of time if Priority One failed to do so. Over the next three years, Rollas loaned Priority One additional monies, notwithstanding Voigt's and Priority One's failure to comply with prior agreements. Rollas subsequently became aware that Voigt and Priority One had misappropriated rental proceeds and tenant security deposits that belonged to him. In January 2016, Rollas terminated the property management agreement.

In April 2016, Rollas sued Priority One and Voigt for failure to repay loans, conversion, breach of fiduciary duty, and civil theft. On August 31, 2016, the trial court entered a final judgment in favor of Rollas, finding that Priority One and Voigt, jointly and severally, owed Rollas a total of $206,184.38, as well as three-fold of actual damages on the civil theft claims, based on the following findings of fact:

> a. PRIORITY ONE MANAGEMENT GROUP, LLC, and PETER VOIGT, have breached the terms of a promissory note in the principal amount of $60,000, of which the sum of $37,500.00 remains due and owing[.]

2

b. PRIORITY ONE MANAGEMENT GROUP, LLC, was a property management company owned and operated by PETER VOIGT, in his capacity as a licensed real estate broker.

c. PETER VOIGT agreed with JOHN ROLLAS that PRIORITY ONE MANAGEMENT GROUP, LLC, would manage various real estate properties of JOHN ROLLAS and would collect and maintain security deposits, collect and disburse rental proceeds from tenants on JOHN ROLLAS's properties, and pay third party vendors from the gross rental proceeds to make necessary repairs to the properties.

d. PETER VOIGT collected the security deposits and rent from tenants occupying JOHN ROLLAS's properties but then commingled the security deposits with funds of other managed properties and used the security deposits and rent from JOHN ROLLAS's properties for payment of monthly operating costs of PRIORITY ONE MANAGEMENT GROUP, LLC, to pay other obligations of PRIORITY ONE MANAGEMENT GROUP, LLC, to pay invoices to third party vendors who performed services on properties not owned by JOHN ROLLAS, and to pay PETER VOIGT.

e. PETER VOIGT's actions are a breach of his obligations of loyalty and care to JOHN ROLLAS.

f. PRIORITY ONE MANAGEMENT GROUP, LLC's and PETER VOIGT's actions have converted money owed to JOHN ROLLAS.

g. PRIORITY ONE MANAGEMENT GROUP, LLC, and PETER VOIGT were negligent in the handling of the security deposits and rent proceeds for the properties being managed for JOHN ROLLAS, and in failing to pay the invoices of third party vendors who provided repair services to properties managed for JOHN ROLLAS.

h. The security deposits held by PRIORITY ONE MANAGEMENT GROUP, LLC, for JOHN ROLLAS total $26,801.

i. The third party vendors who provided services on the properties of JOHN ROLLAS but which were not paid from the gross rental proceeds collected by PRIORITY ONE MANAGEMENT GROUP, LLC, total $1,605.13.

j.   The net rent proceeds owed to JOHN ROLLAS total $133,932.69 as of February 1, 2016.

k.   The actions by PRIORITY ONE MANAGEMENT GROUP, LLC, and PETER VOIGT have been clearly and convincingly demonstrated as violating Section 812.014, *Florida Statutes*, by PRIORITY ONE MANAGEMENT GROUP, LLC, and PETER VOIGT knowingly obtaining or using the property of JOHN ROLLAS, to wit the security deposits and gross rental proceeds, with an intent to permanently deprive JOHN ROLLAS of the monies or benefits of the monies and PRIORITY ONE MANAGEMENT GROUP, LLC, and PETER VOIGT have appropriated the monies for the use of PETER VOIGT and PRIORITY ONE MANAGEMENT GROUP, LLC. JOHN ROLLAS provided Defendants with the statutory demand letter for Civil Theft under Section 772.11, *Florida Statutes*, and has satisfied the conditions precedent [to] filing a cause of action for civil relief under Chapters 772 and 812, *Florida Statutes*.

Thereafter, Rollas filed a Recovery Fund claim with FREC seeking $50,000, the maximum amount recoverable under the statute. *See* § 475.484(1)(a), Fla. Stat. (2016). His claim was limited to monies owed by Voigt for misappropriated security deposits, rental proceeds, and unpaid vendor services. Section 475.482(1), Florida Statutes, establishes the requirements for a valid claim seeking reimbursement from the Recovery Fund:

(1) The Florida Real Estate Recovery Fund shall be disbursed . . . as reimbursement to any person, partnership, or corporation adjudged by a court of competent civil jurisdiction in this state to have suffered monetary damages by reason of any act committed, as part of any real estate brokerage transaction involving real property in this state, by any broker or sales associate who:

(a) Was, at the time the alleged act was committed, the holder of a current, valid, active real estate license issued under this part;

(b) Was neither the seller, buyer, landlord, or tenant in the transaction nor an officer or director of a corporation, a member of a partnership, a member of a limited liability

4

company, or a partner of a limited liability partnership which was the seller, buyer, landlord, or tenant in the transaction; and

(c) Was acting solely in the capacity of a real estate licensee in the transaction;

provided the act was a violation proscribed in section 475.25 or section 475.42.

After an informal hearing, FREC voted to deny Rollas's claim, finding that Voigt was not acting solely in the capacity of a real estate licensee in the transaction. Instead, FREC determined that Voigt was acting in a partnership agreement or joint venture, and the property management agreement was executed as a means for Voigt, acting as a loan debtor, to repay his financial obligations to Rollas. Rollas challenges this determination, contending that he met the statutory requirements for an award under the Recovery Fund. He asserts that his property management agreement with Voigt and Priority One allowed Voigt to obtain possession of Rollas's rental properties' rents and security deposits, which Voigt subsequently converted to his own use. Because Voigt's actions were performed solely in Voigt's capacity as a real estate licensee, Rollas claims that he was entitled to recovery under the Recovery Fund. We agree.

In an appeal from a final administrative action, this court reviews the administrative agency's adjudicative findings of fact for competent, substantial evidence. § 120.68(7)(b), Fla. Stat. (2016); *see also McCloskey v. Dep't of Fin. Servs.*, 115 So. 3d 441, 443 (Fla. 5th DCA 2013); *Keen v. Dep't of Bus. & Prof'l Regulation*, 920 So. 2d 805, 807 (Fla. 5th DCA 2006). This court will not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. *See* § 120.68(10), Fla. Stat. However, we review the agency's conclusions of law de novo. *Id.* § 120.68(7)(d); *see,*

5

*e.g.*, *Abrams v. Seminole Cty. Sch. Bd.*, 73 So. 3d 285, 294 (Fla. 5th DCA 2011). If this court finds "[t]he agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action," this court will either remand the case for further proceedings consistent with this court's analysis or set aside the agency's decision. § 120.68(7), Fla. Stat.; *Citizens of Fla. v. Graham*, 213 So. 3d 703, 711 (Fla. 2017).

The purpose of the Recovery Fund is to provide reimbursement to persons who suffer monetary losses because of the unscrupulous acts of licensed brokers or salespersons. *Hendricks v. Dep't of Bus. & Prof'l Regulation*, 183 So. 3d 1172, 1173 (Fla. 5th DCA 2016). The provisions governing the application of the Recovery Fund are to be "liberally construed to achieve its intended purpose" and "in favor of granting access to the remedy." *Chappell v. Constr. Indus. Recovery Fund*, 835 So. 2d 339, 340 (Fla. 3d DCA 2003) (referencing Construction Industry Recovery Fund, which similarly provides reimbursement to individuals who, among other things, have recovered judgment based on construction contract but have been unable to collect judgment despite diligent efforts to do so); *see also In re Abrass*, 268 B.R. 665, 686 (Bankr. M.D. Fla. 2001) ("The [Recovery] Fund is a remedial device through which the FREC can reimburse members of the public who have been defrauded or otherwise monetarily harmed by a member of the real estate profession.").

Here, the uncontroverted evidence established that Rollas's claim met the requirements set forth in section 475.482(1). Specifically, it is uncontroverted that a court of competent jurisdiction entered a final judgment in favor of Rollas and against Voigt and Priority One. That final judgment recited that Rollas had suffered monetary damages in excess of $50,000 as a result of Voigt converting rental proceeds and security deposits

6

that belonged to Rollas. Voigt came into possession of these funds as part of a real estate brokerage transaction—namely, the property management agreement with Rollas, whereby Voigt and Priority One agreed to manage Rollas's rental properties. It is also undisputed that at the time Voigt converted these funds, he was the holder of a current, valid, active real estate license. Furthermore, in the real estate brokerage transactions at issue, Voigt was serving as a property manager, not a seller, buyer, landlord, or tenant.

Finally, we conclude that Voigt was acting *solely* in the capacity of a real estate licensee at the time he converted the rental proceeds and security deposits belonging to Rollas. The Department argues that the statutory requirement that a broker must have acted solely in the capacity of a licensee exists to preclude recovery in cases like this where the nature of the relationship between the licensee and the would-be claimant is close and multi-faceted. The Department points out that Rollas was both an investor in, and a part owner of, Priority One. We reject the Department's argument because Rollas's claim against the Recovery Fund was not based on losses he incurred as a result of his decision to invest and/or take an ownership interest in Priority One. Rather, his claim was based exclusively on the losses he incurred as a result of Voigt collecting (and subsequently converting) rents and tenant security deposits that came into Voigt's possession pursuant to the property management agreement. Quite simply, Voigt was solely acting as a real estate licensee when he collected those rents and tenant security deposits.

In addition, the fact that Rollas negotiated free or reduced-rate property management services did not transform an otherwise eligible property management transaction into an ineligible transaction. A modified compensation agreement does not

change the real estate licensee's obligation to ethically perform the activities related to the licensure. *See, e.g.*, *Llera Realty, Inc. v. Bd. of Real Estate*, 385 So. 2d 1131, 1133 (Fla. 3d DCA 1980) (observing that creation of Recovery Fund demonstrated Florida's recognition "of the sensitive and privileged position of those engaged in real estate to the public at large").

In conclusion, the evidence established that Voigt was acting solely in his capacity as a real estate licensee when he was managing Rollas's rental properties pursuant to a property management agreement. Due to the property management agreement, Voigt had access to Rollas's rents and security deposits and subsequently converted them for his own use. Accordingly, it was error for FREC to have denied Rollas's claim. On remand, FREC shall enter an order approving Rollas's claim.

REVERSED and REMANDED, WITH INSTRUCTIONS.


SAWAYA and LAMBERT, JJ., concur.